IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PAUL COSTANZO, | ) | |
| | ) | |
| Plaintiff, | ) | 8:04CV99 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| CITY OF OMAHA, DONALD CAREY, | ) | |
| ALAN PEPIN, MARTIN CONBOY, and | ) | |
| BRIDGET HOWELL, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendants' Motion for Summary Judgment (Filing No. 37).[1] The defendants filed a brief (Filing No. 38) and an index of evidence (Filing No. 39) in support of the motion. The plaintiff did not file an opposition to the motion. For the reasons stated below, the court concludes the defendants' motion should be granted and judgment entered against the plaintiff.

### INTRODUCTION

The plaintiff pursues his claim against the defendants based upon violations of his civil rights arising under the Fourth and Fourteenth Amendments to the United States Constitution; 42 U.S.C. §§ 1981, 1983, and 1985; Article I, Sections 1, 3 and 7 of the Nebraska Constitution; and Revised Statutes of Nebraska § 20-148. The plaintiff alleges such violations occurred as a result of the City of Omaha's alleged illegal procedure for obtaining misdemeanor warrants (the Misdemeanor Warrant Procedure). The plaintiff claims that, as a result of the unlawful procedure, he suffered the following injuries: he was unlawfully arrested, incarcerated, and searched; he suffered harm to his reputation and finances; and suffered humiliation and loss of esteem. The plaintiff seeks a declaration that the Procedure is unconstitutional; compensation for damages; and attorneys' fees.

---

[1] The undersigned magistrate judge exercises jurisdiction over this matter after consent by the parties and transfer by United States Circuit Court Judge William Jay Riley, sitting by designation. **See** Filing No. 36.

On June 30, 2005, the defendants filed a motion for summary judgment (Filing No. 37). The defendants seek summary judgment in their favor on all of the plaintiff's claims, move the court to dismiss the plaintiff's complaint with prejudice and award the defendants their costs. The plaintiff did not file a resistance. The court will address the legal issues in the same sequence as in the defendants' brief. On June 10, 2005, the court held a final pretrial conference. The issues remaining for trial were listed as:

1. Whether the arrest of Paul Costanzo in 2001 and 2003 pursuant to arrest warrants issued on sworn affidavits of citizens deprived Paul Costanzo of his constitutional rights not to be arrested without probable cause as protected by the 4th and 14th Amendments to the United States Constitution.
2. If Paul Costanzo was deprived of his constitutional rights in this manner, whether the deprivation was a proximate result of a policy or established practice of the City of Omaha.
3. If Paul Costanzo was deprived of his constitutional rights in this manner, whether the deprivation was a proximate result of an act by Donald Carey, Alan Pepin, Martin Conboy, and/or Bridget Howell.

. . .

7. Whether Nebraska Revised Statute § 20-148 (Reiss. 1997) provides a basis for recovery by Plaintiff.

Filing No. 35 - Pretrial Order (PTO). The defendants do not move for summary judgment on items four and five, relating to the plaintiff's damage calculations, or item six, regarding whether defendant Martin Conboy is entitled to prosecutorial immunity. The defendants concede item two. **See** Filing No. 38, p. 2. Accordingly, the court will determine the merits of items one and seven, which if resolved in favor of the defendants would result in dismissal of the plaintiff's complaint.

**FACTUAL BACKGROUND**

The defendant City of Omaha is a political subdivision of the State of Nebraska and operates the Omaha Police Department (OPD) and the Omaha Law Department's Prosecution Division (the Prosecution Division). PTO ¶ (B)(1). At all relevant times, the defendants Chief Donald Carey (Chief Carey) and Officer Alan Pepin (Officer Pepin) were

sworn police officers of, and employees of, the City of Omaha. PTO ¶ (B)(4). At all relevant times, the defendant Bridget Howell was a non-sworn employee of the OPD. PTO ¶ (B)(4). At all relevant times, the defendant Martin Conboy (Conboy) served as the City of Omaha Prosecutor and supervised the activities of the Prosecution Division. PTO ¶ (B)(5). At all times relevant to the claims in this case, the defendants Chief Carey, Officer Pepin, Howell, and Conboy were acting under the color of law. PTO ¶ (B)(6).

At all relevant times, the OPD had a policy authorizing officers to advise citizens who believed they had been the victim of a crime that they could seek redress by way of the Misdemeanor Warrant Procedure. PTO ¶ (B)(20). At all relevant times, the Prosecution Division maintained the Misdemeanor Warrant Procedure whereby a citizen who believed that he or she had been a victim of a crime could seek a legal remedy by providing to the Prosecution Division via sworn affidavit sufficient information to establish probable cause that a crime had occurred and the identity of the person who allegedly committed the crime. PTO ¶ (B)(21). The Prosecution Division, and not the OPD, retained sole authority to decide whether or not to seek an arrest warrant from a judicial officer. PTO ¶ (B)(21). The decision to issue an arrest warrant is solely the province of a neutral judicial officer after the judicial officer is presented with the complaining citizen's sworn affidavit detailing the facts underlying the allegations of the criminal Complaint. PTO ¶ (B)(21); Defs.' Ex. 1 (Affidavit of Def. Conboy). The Misdemeanor Warrant Procedure follows Revised Statutes of Nebraska § 29-404. Defs.' Ex. 1 (Affidavit of Def. Conboy).

At all relevant times, the plaintiff was a resident of Omaha, Nebraska. PTO ¶ (B)(2). The plaintiff was arrested in 2001 and 2003 based on the issuance of arrest warrants stemming from the Misdemeanor Warrant Procedure.

On August 29, 2001, Julie Erhart (Erhart), Mark Macke, Andrea Macke, and Theresa Jones (Jones) reported to OPD officers that several confrontations had occurred between them and members of the plaintiff's family in or about these people's yards. PTO ¶ (B)(7); Defs.' Ex. 110 (August 29, 2001 Information Report). These allegations were recorded by OPD officers and such records were made available to the Prosecution Division. Defs.' Ex. 110. On August 29, 2001, Erhart specifically reported that the plaintiff had verbally threatened Erhart. PTO ¶ (B)(8); Defs.' Ex. 102 at 2 (August 29, 2001 Uniform Crime Report

of Erhart). Erhart attested Constanzo had approached Erhart on August 29, 2001, and said, "if you don't shut your fucking mouth and quit talking to these neighbors, I'm going to kill you." Defs.' Ex. 116 at 2. This allegation was also recorded by OPD officers and such record was made available to the Prosecution Division. PTO ¶ (B)(8); Defs.' Ex. 102. The officers noted Erhart appeared "quite shaken" and was crying when she made the report. Defs.' Ex. 102 at 2. On August 30, 2001, a Harassment Protection Order was entered protecting Erhart and her family from contact by the plaintiff. Defs.' Ex. 116 at 7-8 (August 30, 2001 Harassment Protection Order).

On September 16, 2001, the plaintiff's daughter reported to officers of the OPD that a confrontation between her and Andrea Macke had occurred in or about these people's yards. PTO ¶ (B)(9); Defs.' Ex. 109 (September 16, 2001 Information Report). This allegation was recorded by OPD officers and such record was made available to the Prosecution Division. PTO ¶ (B)(9); Defs.' Ex. 108.

On September 24, 2001, Erhart submitted an affidavit executed under oath to the Prosecution Division describing an encounter she had with the plaintiff. PTO ¶ (B)(10); Defs.' Ex. 116 at 1-2 (Affidavit of Complaining Witness Erhart). On that same date Erhart executed a "Prosecuting Attorney's Complainant Agreement," asking the Prosecution Division to pursue criminal charges against the plaintiff as a result of the alleged encounter. PTO ¶ (B)(10); Defs.' Ex. 116 at 3 (Prosecuting Attorneys' Complainant Agreement executed by Erhart September 24, 2001). In such Agreement, Erhart agreed the allegations were true and of a serious nature, she would appear and testify in support of the allegation at any court proceedings if asked to do so, and only the Prosecution Division had the power to dismiss any charges. PTO ¶ (B)(10); Defs.' Ex. 116 at 3. On October 15, 2001, Erhart signed under oath a Complaint and Information charging the plaintiff with the crime of disorderly conduct, which was later amended to the crime of disturbing the peace. PTO ¶ (B)(10); Defs.' Ex. 116 at 4 (October 15, 2001 Complaint). On October 16, 2001, a Douglas County Court Judge signed a warrant for the plaintiff's arrest. PTO ¶ (B)(10); Defs.' Ex. 116 at 5. On December 7, 2001, a Douglas County Court Judge found the plaintiff guilty of disturbing the peace. PTO ¶ (B)(10); Defs.' Ex. 116 at 6.

On September 25, 2001, Mark Macke reported to an OPD officer that a member of the plaintiff's family was suspected of making harassing telephone calls to Mark Macke's employer. PTO ¶ (B)(11); Defs.' Ex. 103 at 2 (September 25, 2001 Uniform Crime Report of Mark Macke). This allegation was recorded by an OPD officer and such record was made available to the Prosecution Division. PTO ¶ (B)(11); Defs.' Ex. 103.

On September 25, 2001, the plaintiff's daughter reported to an OPD officer that a confrontation between Mark Macke and herself occurred in or about these people's yards. PTO ¶ (B)(12); Defs.' Ex. 111 (September 25, 2001 Information Report). This allegation was recorded by an OPD officer and such record was made available to the Prosecution Division. PTO ¶ (B)(12); Defs.' Ex. 111.

On May 1, 2002, Andrea Macke reported to an OPD officer that the plaintiff's wife had verbally threatened her. PTO ¶ (B)(13); Defs.' Ex. 104 at 2 (May 1, 2002 Uniform Crime Report of Andrea Macke). On May 11, 2002, Andrea Macke reported to an OPD officer that the plaintiff's wife had physically assaulted her. PTO ¶ (B)(14); Defs.' Ex. 105 at (May 11, 2002 Uniform Crime Report of Andrea Macke). On May 13, 2002, the plaintiff's wife reported to an OPD officer that a confrontation occurred between Andrea Macke and herself in or about these people's yards. PTO ¶ (B)(15); Defs.' Ex. 114 (May 13, 2002 Information Report). These three allegations were recorded by an OPD officer and such records were made available to the Prosecution Division. PTO ¶ (B)(13)-(15); Defs.' Ex. 104, 105, 114.

On August 3, 2002, Jones reported to an OPD officer that a confrontation between Jones's son and the plaintiff at the corner of 90th Street and Spaulding Street. Defs.' Ex. 113 (August 3, 2002 Information Report). The confrontation included Costanzo and his wife approaching Jones's son, in violation of a protection order, in a vehicle and "took pictures of her son and flicked him off." *Id.* On August 23, 2002, Jones reported to an OPD officer that a confrontation had occurred between the plaintiff's wife and herself. PTO ¶ (B)(16). This allegation was recorded by an OPD officer and such record was made available to the Prosecution Division. PTO ¶ (B)(16).

On November 6, 2002, the plaintiff's wife and Andrea Macke reported to OPD officers that a verbal confrontation occurred between Mark Macke and the plaintiff in or about these people's yards. PTO ¶ (B)(17); Defs.' Ex. 106 at 2 (November 6, 2002 Uniform Crime Report

5

of the plaintiff). This allegation was recorded by an OPD officer and such record was made available to the Prosecution Division. PTO ¶ (B)(17).

On March 23, 2003, Andrea Macke reported to an OPD officer that a confrontation occurred between the plaintiff and herself in or about these people's yards. PTO ¶ (B)(18); Defs.' Ex. 107 (March 23, 2003 Information Report). Costanzo had a very bright spotlight aimed at Andrea Macke's house, including at the bedroom windows, and into the back yard. *Id.* Costanzo also constructed a "duck blind" in a tree, from where Costanzo would use binoculars to watch Andrea Macke's house. *Id.* Andrea Macke told the officer she was afraid to let her children play outside. *Id.* This allegation was recorded by an OPD officer and such record was made available to the Prosecution Division. PTO ¶ (B)(18); Defs.' Ex. 107.

In March 2003, Erhart, Jones, and Andrea Macke submitted affidavits executed under oath to the Prosecution Division describing several encounters between the plaintiff and themselves. PTO ¶ (B)(19); Defs.' Ex. 117 at 1-2 (Affidavit of Complaining Witness Jones); Defs.' Ex. 118 at 1-5 (Affidavit of Complaining Witness Erhart); Defs.' Ex. 119 at 1-5 (Affidavit of Complaining Witness Andrea Macke). The complainants reported Costanzo drove by their homes and "flipped off," watched or took pictures of them and their children. Costanzo would drive by slowly, repeatedly and sometimes toward people. This behavior including Costanzo parking in front of their homes or stopping in the street to take pictures. Costanzo would follow the complainants and their children. Costanzo also stood in his yard or house or sat up in his tree taking pictures of and watching the complainants, their families and a dog. Costanzo would take a notebook outside and stare at the complainants, their families and friends and then write things in the notebook. Costanzo and his family and the complainants and their families also had verbal altercations including yelling things at each other. The reported conducted took place over the course of a year or more.

In connection with the March 2003 affidavits, Jones, Erhart and Macke each executed a "Prosecuting Attorney's Complainant Agreement," asking the Prosecution Division to pursue criminal charges against the plaintiff as a result of the alleged encounters. Defs.' Ex. 117 at 3 (Prosecuting Attorneys' Complainant Agreement executed by Jones March 27, 2003); Defs.' Ex. 118 at 6 (Prosecuting Attorneys' Complainant Agreement executed by Erhart March 24, 2003); Defs.' Ex. 119 at 6 (Prosecuting Attorneys' Complainant Agreement executed by

Andrea Macke March 24, 2003). In each respective Agreement, Jones, Erhart and Andrea Macke agreed their allegations were true and of a serious nature, and that they would appear and testify in support of the allegations at any court proceedings if asked to do so, and only the Prosecution Division had the power to dismiss any charges. Defs.' Ex. 117 at 3; Defs.' Ex. 118 at 6; Defs.' Ex. 119 at 6.

On the same date Erhart, Jones and Andrea Macke executed under oath individual Complaint and Information documents charging the plaintiff with the crime of stalking. PTO ¶ (B)(19); Defs.' Ex. 117 at 4 (March 27, 2003 Complaint); Defs.' Ex. 118 at 7 (March 27, 2003 Complaint); Defs.' Ex. 119 at 7 (March 27, 2003 Complaint). Under the supervision of the defendant Conboy, the Complaint and Information was reviewed and approved by an attorney who filed such with the Douglas County Court. PTO ¶ (B)(19).

On March 31, 2003, a Douglas County Court Judge signed a warrant for the arrest of the plaintiff based on the Complaint and Information documents. PTO ¶ (B)(19); Defs.' Ex. 117 at 5; Defs.' Ex. 118 at 8; Defs.' Ex. 118 at 8. On September 29, 2003, the Complaint and Information were dismissed pursuant to a motion filed by the Prosecution Division. PTO ¶ (B)(19); Defs.' Ex. 117 at 6; Defs.' Ex. 118 at 9; Defs.' Ex. 119 at 9.

## ANALYSIS

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." **See** Fed. R. Civ. P. 56(c); ***McAllister v. Transamerica Occidental Life Ins. Co.***, 325 F.3d 997, 999 (8th Cir. 2003). When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 249 (1986); **see also** ***Johnson v. Crooks***, 326 F.3d 995 1007-08 (8th Cir. 2003). "An issue of material fact is genuine if it has a real basis in the record." ***Hartnagel v. Norman***, 953 F.2d 394, 395 (8th Cir. 1992) (**citing** ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475

7

U.S. 574, 586-87 (1986)). A court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" **Dulany v. Carhahan**, 132 F.3d 1234, 1237 (8th Cir. 1997) (**quoting Anderson**, 477 U.S. at 248).

Summary judgment is proper when the plaintiff fails to demonstrate the existence of a factual dispute with regard to each essential element of his claim. **Bialas v. Greyhound Lines, Inc.**, 59 F.3d 759, 762 (8th Cir. 1995). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." **Celotex Corp. v. Catrett**, 477 U.S. 317, 323-24 (1986). A party seeking summary judgment bears the responsibility of informing the court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." **Tenbarge v. Ames Taping Tool Sys., Inc.**, 128 F.3d 656, 657 (8th Cir. 1997) (**quoting Celotex**, 477 U.S. at 325 (noting that the movant must show "there is an absence of evidence to support the nonmoving party's case.")). Under this court's local rules:

> The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law.

**See** NECivR 56.1(a)(1).

In the face of a properly-supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" **Prudential Ins. Co. v. Hinkel**, 121 F.3d 364, 366 (8th Cir. 1997) (**quoting** Fed. R. Civ. P. 56(e)). A nonmoving party may not rest upon the mere allegations or denials of its pleadings but, rather, must show specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial. **See** Fed. R. Civ. P. 56(e); **Liberty Mut. Ins. Co. v. FAG Bearings Corp.**, 153 F.3d 919, 922 (8th Cir. 1998). A nonmoving party must offer proof "such

that a reasonable jury could return a verdict for the nonmoving party." **Anderson**, 477 U.S. at 248. Additionally, under this court's local rules:

> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response</u>.

**See** NECivR 56.1(b)(1) (emphasis added).

In the instant case, the plaintiff did not resist the defendants' motion. However, the court must proceed to consider whether there is any material fact in dispute and whether the defendants are entitled to judgment as a matter of law.

### A.    42 U.S.C. § 1983

"To survive a motion for summary judgment on a § 1983 claim, the plaintiff must raise a genuine issue of material fact as to whether (1) the defendants acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." **Luckes v. County of Hennepin, Minn.**, 415 F.3d 936, 938-39 (8th Cir. 2005) (citation and quotations omitted). It is undisputed that the defendants acted under color of state law, and so the plaintiff must raise a genuine issue of material fact only as to whether the defendants' conduct deprived him of a constitutionally protected federal right. The plaintiff contends the "private warrant process" followed by the City led to the plaintiff's arrest without probable cause. The "private warrant process" is the Misdemeanor Warrant Procedure, which was utilized to obtain arrest warrants for the plaintiff in 2001 and 2003.

The Fourth Amendment provides, "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons or things to be seized." U.S. CONST. amend. IV. An arrest made in violation

of Fourth Amendment standards will give rise to an action under § 1983. **See *Monroe v. Pape***, 365 U.S. 167, 171-72 (1961)*, overruled on other grounds by **Monell v. Dep't of Soc. Servs of City of New York***, 436 U.S. 658 (1978); ***McCoy v. City of Monticello***, 342 F.3d 842, 846-47 (8th Cir. 2003). The court will first evaluate the constitutionality of the Misdemeanor Warrant Procedure, then whether, in this case, probable cause existed for Costanzo's arrests.

A valid arrest warrant is one issued by a neutral and detached magistrate after a finding of probable cause. **See *Shadwick v. City of Tampa***, 407 U.S. 345, 350 (1972). The warrant must also truly name or describe the person to be arrested sufficiently to identify him. **See *West v. Cabell***, 153 U.S. 78, 85-86 (1894). The Misdemeanor Warrant Procedure does not obviate the need for any of the constitutional requirements for an arrest warrant. The Misdemeanor Warrant Procedure requires each citizen complainant to provide a sworn affidavit with information sufficient to provide probable cause that a particular person committed a crime. Additionally, the Misdemeanor Warrant Procedure requires the Prosecution Division to review the materials for sufficiency before seeking an arrest warrant from a judicial officer, who makes an independent assessment of probable cause. **See** Neb. Rev. Stat. § 29-404; **see also *Nebraska v. Cortis***, 465 N.W.2d 132, 141 (Neb. 1991). The warrants in this case were both signed by a county court judge after such judge made a probable cause determination. Further, there is no contention that either of the county court judges who issued arrest warrants in this matter failed to be neutral or detached.

Finally, the plaintiff contends neither the police nor the Prosecution Division investigated the complainant's allegations. **See** Filing No. 1, ¶¶ 5-6 (Complaint). The plaintiff's contention is not supported by the facts. **See** Defs.' Ex. 1 (Affidavit of Def. Conboy) (describing investigation) ("This matter involved the most extensive and lengthy investigation conducted by my office on any matter in the twenty five years I have worked here."). Moreover, no independent investigation is constitutionally required. **See *Baker v. McCollan***, 443 U.S. 137, 145-46 (1979) ("[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent."). Accordingly, finding no

support for Costanzo's argument that the Misdemeanor Warrant Procedure is unconstitutional, summary judgment is granted on such claim.

However, the fact an arrest warrant was issued pursuant to a constitutional process does not necessarily end the inquiry.  **See *Briggs v. Malley***, 748 F.2d 715 (1st Cir. 1984) (holding "the issuance of a warrant by a judicial officer does not provide 'an impregnable shield' against liability under § 1983 for negligent conduct" of the police officer who sought warrant).  The relevant issue is whether the officers had probable cause to arrest Costanzo. ***Sheets v. Butera***, 389 F.3d 772, 777 (8th Cir. 2004).  Probable cause is determined on the objective facts available "at the time of the arrest, and exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense at the time of the arrest."  ***Id.*** (internal citations and quotations omitted); **see *Beck v. Ohio***, 379 U.S. 89, 91 (1964).  Costanzo was arrested on two separate occasions based on the same warrant procedure, therefore the court will evaluate each arrest seriatim.

### 1.     October 16, 2001 Arrest Warrant

On October 15, 2001, Erhart signed a city complaint against Costanzo for the misdemeanor disorderly conduct, a violation of Omaha Municipal Code § 20-42.  The information known to the judge and police officers before Costanzo's arrest included Erhart attesting Costanzo had approached Erhart on August 29, 2001, and said, "if you don't shut your fucking mouth and quit talking to these neighbors, I'm going to kill you."  Defs.' Ex. 116 at 2.  Additionally, Erhart obtained a harassment protection order entered August 30, 2001, based on the same conduct.  ***Id.*** at 7.  On October 16, 2001, an arrest warrant was issued by a county court judge for disorderly conduct.  ***Id.*** at 5.

Under the offense of disorderly conduct, the Code provides:

> It shall be unlawful for any person purposely or knowingly to cause inconvenience, annoyance or alarm or create the risk thereof to any person by:
> (a)     Engaging in fighting, threatening or violent conduct; or
> (b)     Using abusive, threatening or other fighting language or gestures.

11

Erhart alleged, under penalty of perjury, Costanzo engaged in conduct proscribed by the Municipal Code. The abusive and threatening language constituted probable cause in support of the arrest warrant and Costanzo's later arrest. The police had uncontroverted, unrebutted statements by Erhart, who appeared "quite shaken" and was crying when police arrived. Defs' Ex.102 at 2; Ex. 116. Given the objective facts available to the police at the time of Costanzo's arrest, they had probable cause to conclude that Costanzo had committed the offense. Based upon the facts known to the officers at the time of Costanzo's arrest, construed in the light most favorable to Costanzo, there is no evidence that supports a Fourth Amendment violation.

Furthermore, on December 7, 2001, a county court judge found Costanzo guilty of the amended charge of disturbing the peace, a violation of Nebraska Revised Statute § 28-1322. "A person who shall intentionally disturb the peace and quiet of any person, family, or neighborhood commits the offense of disturbing the peace." Neb. Rev. Stat. § 28-1322. The Nebraska Supreme Court has defined the two offenses similarly. "Disorderly conduct is any act which tends to breach the peace or to disturb those who hear or see it, or to endanger the morals, safety, or health of the community." ***Nebraska v. Sukovaty***, 135 N.W.2d 467, 469 (Neb. 1965) (12 Am.Jur.2d, Breach of Peace and Disorderly Conduct, s. 30, p. 685). In the Eighth Circuit, a claimant's "conviction of the offense for which he was arrested is a complete defense to a § 1983 action asserting that the arrest was made without probable cause." ***Malady v. Crunk***, 902 F.2d 10, 11 (8th Cir. 1990); **see also** ***Brown v. Willey***, 391 F.3d 968 (8th Cir. 2004). Therefore, since Costanzo was convicted of disturbing the peace for his engaging in disorderly conduct, such conviction is a complete defense to a § 1983 action for the October 2001 arrest.

### 2.     March 31, 2003 Arrest Warrant

On March 27, 2003, Erhart, Andrea Macke and Jones each signed state complaints against Costanzo for misdemeanor stalking, a violation of Revised Nebraska Statute § 28-311.03. The information known to the judge and police officers before Costanzo's arrest included the three complainants attesting to a series of conflicts between them and Costanzo

and his family. Additionally, the complainants described incidents from approximately February 2002 until March 2003, when Costanzo would drive by repeatedly, slowly or toward people, stare at, "flip off" and take pictures of the complainants and their families. On March 31, 2003, three arrest warrants were issued by a county court judge for stalking. Defs.' Ex. 117-119.

"Any person who willfully harasses another person with the intent to injure, terrify, threaten, or intimidate commits the offense of stalking." Neb. Rev. Stat. § 28-311.03. The complainants alleged, under penalty of perjury, Costanzo engaged in conduct proscribed by the stalking statute. The alleged intimidating and threatening conduct constituted probable cause for arrest warrants to issue and Costanzo's later arrest. The police had uncontroverted, unrebutted statements by the complainants, who described conduct over the course of a year, involved several police contacts and menacing behaviors. Defs.' Ex. 103, 107, 113, 117-119. Given the objective facts available to the police at the time of Costanzo's arrest, they had probable cause to conclude that Costanzo had committed the offenses charged. Based upon the facts known to the officers at the time of Costanzo's arrest, construed in the light most favorable to Costanzo, there is no evidence that supports a Fourth Amendment violation.

**B.    Neb. Rev. Stat. § 20-148**

In addition to the claims brought under 42 U.S.C. § 1983, the plaintiff seeks recovery of damages under Nebraska Revised Statutes § 20-148 (Reiss. 1997), which provides, in relevant part:

> Any person or company, as defined in section 49-801, except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.

Neb. Rev. Stat. § 20-148.

The plaintiff alleges the individual defendants caused the deprivation of his rights while they were acting under color of law in their capacities as the Omaha City Prosecutor and as

Omaha police officers. However, section 20-148 does not impose liability upon these defendants.

"Section 20-148 was enacted in 1977 to provide an immediate and expeditious civil remedy to any person in Nebraska whose constitutional or statutory rights have been violated." ***Adkins v. Burlington N. Santa Fe R. Co.***, 615 N.W.2d 469, 472 (Neb. 2000). Most important here, section 20-148 is a procedural statute that does not create any new substantive rights. ***Goolsby v. Anderson***, 549 N.W.2d 153, 157-58 (Neb. 1996). The plain language of the statute excludes political subdivisions. Additionally, the Nebraska Supreme Court has defined the scope of the statute to also exclude the individual defendants named in this case. In ***Wiseman v. Keller***, 358 N.W.2d 768, 771 (Neb. 1984) the court concluded that the sweep of section 20-148 was intended to apply to private acts of discrimination by private employers. Accordingly, section 20-148 does not apply to an individual acting in the capacity of a public official. See ***Biby v. Bd of Regents of Univ. of Neb. at Lincoln***, 340 F. Supp. 2d 1031, 1036 (D. Neb. 2004); ***Cole v. Clarke***, 598 N.W.2d 768, 772 (Neb. App. 1999); ***Sinn v. City of Seward***, 523 N.W.2d 39, 76 (Neb. App. 1994). For these reasons, the plaintiff can maintain no claims against the defendant under section 20-148, and such allegations must be dismissed. Upon consideration,

**IT IS ORDERED:**

1. The defendants' Motion for Summary Judgment (Filing No. 37) is granted.
2. This action and the plaintiff's Complaint are dismissed with prejudice.
3. Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered on this date in accordance with this Order.

DATED this 17th day of November, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge